Of Counsel:
PORTER MCGUIRE KIAKONA & CHOW, LLP

KAPONO F.H. KIAKONA        7691-0
CHRISTOPHER P. ST. SURE    10001-0
841 Bishop Street, Suite 1500
Honolulu, Hawaii 96813
Telephone: 808-539-1100
Facsimile: 808-539-1189
Email: kkiakona@HawaiiLegal.com
       cstsure@HawaiiLegal.com

Attorneys for Plaintiff
ASSOCIATION OF APARTMENT OWNERS
OF HANOHANO HALE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF HANOHANO HALE,<br><br>Plaintiff,<br><br>vs.<br><br>GREAT AMERICAN INSURANCE AGENCY, INC.; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; AND DOE CORPORATIONS 1-10,<br><br>Defendants. | CIVIL NO. _____<br>(Declaratory Relief)<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT; EXHIBITS "A" – "C"** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Comes now Plaintiff ASSOCIATION OF APARTMENT OWNERS OF HANOHANO HALE (the "Association" and/or "Plaintiff") by and through their attorneys, Porter McGuire Kiakona & Chow, LLP, allege as follows:

1. Plaintiff is an association of condominium apartment owners of the Hanohano Hale Condominium Project situated in the City and County of Honolulu, State of Hawaii,

organized and existing pursuant to Chapters 514A and 514B, *Hawaii Revised Statutes*, as amended (collectively, "Chapter 514B").

2. Upon information and belief, Defendant GREAT AMERICAN INSURANCE AGENCY, INC. ("Great American") is an Ohio based Company with its principal place of business in Cincinnati, Ohio.

3. The Defendants designated as John Does 1-20, Jane Does 1-20, Doe Entities 1-20, and Doe Insurance Entities 1-20 (collectively, the "Doe Defendants") are individuals, partnerships, corporations, associations, and/or governmental or private entities who, though not currently discovered or known to Plaintiff despite diligent inquiry, may have contributed to, or may be directly or vicariously responsible for causing, (1) the impasse leading to this action, or (2) the damages, if any, sustained by Plaintiff and/or (3) owe defense or indemnity coverage to Plaintiff. All references in this Complaint, to any of the named defendants, or to "Defendants," include these Doe Defendants.

4. Plaintiff brings this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 2201 seeking a judicial declaration that, as a matter of law, Great American has a duty to defend and indemnify Plaintiff for the claims asserted against it in the Underlying Lawsuit, described below.

5. Pursuant to 28 U.S.C. § 1332, as amended, there is complete diversity of citizenship between the parties in this action.

6. The amount in controversy exceeds $75,000 because the policies at issue carry limits of $1,000,000.00 per occurrence, and since the Underlying Lawsuit, described below, has been filed against the Association seeking substantial special damages and other relief.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## UNDERLYING LAWSUIT

8. Attached hereto as **Exhibit "A"** is a true and correct copy of the First Amended Complaint from the lawsuit filed in the County of Honolulu, in the Circuit Court of the First Circuit of the State of Hawaii, entitled <u>Michael Iovino v. Association of Apartment Owners of Hanohano</u>

Hale et al., Civil No. 16-1-1532-08 (the "Underlying Lawsuit"), in which the Association, the Association's Property Management Company, and the Association's site manager, are named as defendants.

9. The Underlying Lawsuit was filed on August 5, 2016 and was amended on January 28, 2017.

10. The Underlying Lawsuit alleges, among other things, that Michael Iovino was an owner of Units 714 and 715 at the Hanohano Hale condominium project. Exhibit "A" at ¶ 1.\

11. The Underlying Lawsuit alleges that Michael Iovino sustained substantial damage to each of his Units as a result of flooding. Exhibit "A" at ¶ 15.

12. The Underlying Lawsuit alleges, among other things, that the Association failed to repair, maintain, amend and keep all of the common elements of the project in good order and condition. Exhibit "A" at ¶ 13.

13. The Underlying Lawsuit alleges that the Association neglected to notify Michael Iovino of the flooding and that the Association failed to offer any assistance. Exhibit "A" at ¶ 14.

14. The Underlying Lawsuit alleges that the Association chose to remediate its own units over his units. Exhibit "A" at ¶ 23.

15. The Underlying Lawsuit alleges that when the Association finally treated Michael Iovino's units for pests, the Association did not obtain authorization from him to do so and entered his units without permission. Exhibit "A" at ¶ 26.

16. The Underlying Lawsuit alleges that the Association negligently treated Michael Iovino's units because it did not have an accurate list of the units that were recently treated. Exhibit "A" at ¶ 27.

17. The Underlying Lawsuit alleges that the Association charged Michael Iovino for the duplicative treatment at an increased rate. Exhibit "A" at ¶ 28.

18. The Association timely tendered the Underlying Lawsuit to Great American.

19. Attached hereto as **Exhibit "B"** is a true and correct copy of the Great American insurance policy numbered EPP9715546-08 with a policy period of January 1, 2016 to January 1, 2017 issued by Great American to the Association (the "Great American Policy").

20. The Great American Policy covers the Association and Board of Directors for "Wrongful Acts" including, but not limited to, an "actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty."

21. The claims made by Michael Iovino fall squarely within the Great American Policy because, among other things, Michael Iovino's claims assert that the Association mismanaged, failed to maintain, and failed to repair the common elements to the detriment of the Association.

22. In addition, Michael Iovino, an owner at the Project, alleges that the Association used common funds to repair only the units it owned.

23. Attached hereto as **Exhibit "C"** is a true and correct copy of a letter dated December 2, 2016 from counsel for the Association, in which the Association demanded insurance coverage for the claims in the Underlying Lawsuit, including that Great American advance the Association defense costs incurred in the Underlying Lawsuit.

24. Great American has denied the Association's demand for Great American to assume the defense of the Association in the Underlying Lawsuit.

25. There is no basis in fact or in law for the coverage position that Great American took in denying defense and indemnity of the Underlying Lawsuit.

26. A reasonable claims investigation would have revealed that Michael Iovino, in the Underlying Lawsuit, made claims against the Association that did not fall under an exclusion under the Great American Policy.

## COUNT I: DECLARATORY JUDGMENT

27. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above.

28.  The Great American Policy is the contract under which Plaintiff was covered for any claims brought against it by an Owner at the Hanohano Hale Project for neglect or breach of duty.

29.  There is an actual and ongoing controversy between Great American and the Association as to Great American's obligations owed to the Association under the Great American Policy including, but not limited to, Great American's duty to defend the Plaintiff.

30.  This duty arises "whenever there is a potential for indemnification liability of the insurer to the insured." Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 169, 872 P.2d 230, 233 (Haw. 1994). Even if the possibility for coverage is remote, the insurer still owes the insured a duty to defend. Id.

31.  In the Underlying Lawsuit, Michael Iovino alleges, among other things, that the Association did not act in a manner consistent with its Governing Documents by (1) hiring contractor's with conflicts of interest and without adequate skill; (2) failing to act appropriately upon the discovery of mold; (3) charging Mr. Iovino more than the Association paid for termite control; and (4) repairing the Association's own units for the purpose of renting these units out instead of repairing Mr. Iovino's units.

32.  More specifically, in paragraph 22 of the Underlying Lawsuit, Michael Iovino alleges the following:

> 22. Upon information and belief, both Hawaiiana and the AOAO obtained complete asbestos abatement treatment for some of the units within Hanohano Hale, likely the ones it owns and rents.

33.  In paragraph 23 of the Underlying Lawsuit, Michael Iovino alleges the following:

> 23. Then, with the full knowledge of active mold in many of the flooded units, the AOAO proceeded to have the plumbing repaired, and closed the walls, leaving the active mold to incubate within the walls of each unit. While the AOAO maintained to Mr. Iovino that it would come back and fix the mold issue, such actions were never taken, and the mold has presumably gotten worse throughout the Hanohano Hale as a result.

34. In paragraph 27 of the Underlying Lawsuit, Michael Iovino alleges:

> 27. Moreover, the AOAO then charged Mr. Iovino for this duplicative service [the chemical treatment], at an increased rate from what it paid for the treatment.

35. In paragraph 28 of the Underlying Lawsuit, Michael Iovino alleges:

> 28. In or around December 11, 2014, Marvin Craven stopped Mr. Iovino in the lobby of Hanohano Hale as Mr. Iovino was getting his mail. Mr. Craven began to threaten Mr. Iovino with fines and to call the police to have Mr. Iovino removed from the building, accusing Mr. Iovino of loitering in the Hanohano Hale lobby. . .

36. In paragraph 30 of the Underlying Lawsuit, Michael Iovino alleges:

> 30. Mr. Iovino alerted Hawaiiana and the AOAO of Mr. Craven's threats and wholly inappropriate actions shortly thereafter, requesting immediate action be taken. Upon information and belief, no action was ever taken.

37. Based upon the above allegations, the possibility of coverage under the Great American Policy exists and Great American is therefore obligated to defend Plaintiff.

38. Under Hawaii law, "[a]ll doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, 76 Haw. 277, 287, 875 P.2d 894, 904 (Haw. 1994).

39. Accordingly, Plaintiff is entitled to a declaration as to Great American's obligations to Plaintiff under the Great American Policy, and an order that Great American pay to Plaintiff its attorneys' fees and costs incurred in the defense of the Underlying Lawsuit.

## COUNT II: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

40. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above.

41. Great American owed Plaintiff a duty of good faith and fair dealing in connection with its handling of the Underlying Lawsuit including, but not limited to, the denial of its duty to defend Plaintiff.

42. Under Hawaii Law, Great American must employ a "good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation" in order to determine whether the possibility of coverage under the policy existed. Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co. Ltd., 65 Haw. 521, 527, 654 P.2d 1345, 1349 (Haw. 1982).

43. Great American failed to, among other things, conduct a good-faith analysis of the facts alleged in the Complaint and failed to factor in the liberal pleading rules in Hawaii for the purposes of its coverage analysis.

44. Great American's duty of good faith and fair dealing included Great American's duty not to place its own interests over Plaintiff's interests.

45. Great American's duty of good faith and fair dealing also included a duty to act as a reasonable insurer would have acted in the circumstances.

46. Great American breached its duty of good faith and fair dealing by denying its duty to defend the Association against the Underlying Lawsuit and denying indemnification in the Underlying Lawsuit.

47. Great American's bad faith conduct, as set forth herein, was unreasonable and below the standards of good faith and fair dealing as set forth in Hawaii case law.

48. Great American's bad faith conduct, as set forth herein, was done oppressively, intentionally, willfully, maliciously, and/or with the entire want of care which raises the presumption of a conscious indifference to consequences and/or wanton disregard for the interests and legal rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages against Great American.

WHEREFORE, Plaintiff prays for the following relief:

A. An order that Defendants pay benefits owed to the Association under the Great American Policy, including defense and/or indemnity benefits;

    B.    An order that Great American is under a duty to advance defense costs incurred in the Underlying Lawsuit to the Association;

    C.    An award of attorneys' fees and costs of suit pursuant to HRS § 431:10-242; and

    D.    Any other relief that this Court deems appropriate.

DATED: Honolulu, Hawaii, __JAN 1 0 2018__

                                        KAPONO F.H. KIAKONA
                                        CHRISTOPHER P. ST. SURE
                                        Attorneys for Plaintiff
                                        ASSOCIATION OF APARTMENT
                                        OWNERS OF HANOHANO HALE